May it please the Court, my name is Michael Hegeman and I represent 29 private, for-profit, and not-for-profit ambulance companies. What is the most important role of the courts? Reasonable people can disagree on that, but I believe a very good argument is to protect the minority from the majority, because the political process breaks down when you have a majority voting for something against the minority. And how do the founders of this nation protect against that situation, knowing that it would be coming up time and time and time and time again in the political process? The Constitution, and that is the tool that the courts use to protect the minority from the majority, and the majority is not always the same, the minority is not always the same depending on the issue. We are here today because the majority of Californians don't own ambulance companies. That means they don't care if the state uses their property, the ambulance company's property, to reduce their taxes. And the politicians in Sacramento don't care if the state uses the ambulance company's properties to lower taxes. In fact, it's in their best interest. So the problem becomes the Constitution and federal law does not allow this. And there have been a lot of cases that have come down while this case has been pending, like Armstrong and a couple other cases in the Supreme Court as well in the Ninth Circuit, that I believe are distinguishable from this particular case. The number one distinguishing factor in this case is the procedural posture. We are here on an appeal of a motion for summary judgment. The interesting part about the motion for summary judgment is there was no argument that the burden was shifted. And the evidence submitted to affirmatively prove the defendant's case was troubled at best both under discovery rules and other evidentiary bases. And the trial court admitted certain, tacitly admitted certain evidence into evidence without ruling on those objections. So I think it's difficult for this court to even get to the merits, the underlying merits of this case because of the procedural posture of the case from the district court. Now moving on from there and assuming that the court treated this as a motion to dismiss under 12b6 or 12c, there are certainly topics to discuss. One of the most important topics to discuss is private right of action. And in Armstrong, the Supreme Court held there is no private right of action under the Medicaid Act 30a, which is 1392a sub a 30 cap a. And that was the holding in Armstrong. And having read Armstrong several times, it's actually an incredibly narrow holding. It's a 5-4 decision. But you're not suing under that act, are you? No, we're not. But it was raised in the answering brief, so I'm trying to distinguish it as to why. Okay. Why don't you talk about your affirmative claims? What are you raising? Because I noticed there's sort of the opinion talks about a series of claims under the U.S. Constitution. And your brief raises two other constitutional claims that were not raised below. And then you seem to center on just the takings claims. So I'm wondering what constitutional claims you're making at this point in time. Sure. Well, first, because of the procedural posture of the case, the facts dictate this appeals, essentially. And so what the headings we use in our First Amendment complaint are somewhat irrelevant. And I am answering your question, Your Honor. So the claims that we're making, we have takings claim, we have a contracts clause claim, we have equal protection, and we have a dormant commerce clause. Those are the constitutional claims that we're making. What is, in your opinion, your strongest claim? I think a private right of action under the federal claim, private right of action, which I'll come back to. But as far as constitutionally, I think it's really hard because they all have a central issue, which is what's the property that's being taken. So they all have a common theme. And I think that they're not terribly different claims. They both relate substantially to what is the property taken. Because most cases have held that Medicaid reimbursement rates are not property. You can't expect that. And I'm going to clarify that point a little bit later. So what is the property that you allege is being taken? The ambulance equipment and the wages paid to the payroll and everything like that. And I think that under the circumstances, and I hate to do this to this Court. But did you put in any evidence as to that? It's in the pleading. And the burden was never shifted. Well, I mean, if you're going to claim that what was taken was the economic value, impermanently taken, was the economic value of your services, the beds, the medications, the wages, or whatever, shouldn't you put in some evidence as to what that is? I believe we did. I was not trial counsel. But what I can tell you is the record is a motion for summary judgment with no burden-shifting evidence. I don't understand what you mean when you're talking about burden-shifting evidence. Okay. So a defendant under CELATEX and FRCP 56, a defendant can move for summary judgment in essentially two ways. One is they can say, District Court, look, we asked the plaintiff to prove his or her case. They can't do it. See, here are the discovery responses. That's burden-shifting. And then the second way to gain summary judgment is to affirmatively, with evidence, prove your case, where the defendant says, no, I can prove statute of limitations. See, look, this happened on this date. But if you were making that argument and you were opposing their motion for summary judgment on, say, takings, isn't all that economic information in the hands of your ambulance companies and couldn't they have compiled that and submitted a declaration as to that? I believe it was. I didn't pay attention a lot to that issue in briefing, and because of the issue of Rule 56, which is we never get to that point because they've never shifted their burden. So the truthful answer is I would need to provide supplemental briefing on that issue if you wanted to know more about it. You mean they never shifted the burden. I don't understand. When they move for summary judgment, you've got to show there's a genuine dispute of material fact. They have to provide discovery showing that they've shifted the burden under Celotex. And we did. By the way, no, we did submit evidence of that. The reason why I'm not as prepared to answer your questions as I'd like to be right now is the judge didn't really get to that issue and agreed that basically, yes, that's your ambulance. The district court found that in the district court's order that this is what you're alleging. That wasn't the issue. That isn't disputed on appeal. What the district court said is that the underpayment in Medicaid didn't cause you to lose that. That was another statute. That's what the district court said. And so that's why, as far as an evidentiary basis. You seem to have two different issues and two different statutes. One is the Medicaid charge in general where there's a case that says it's voluntary participation. Then you've got a totally different issue, it seems to me, that you're raising about the use of the ambulances where you are, as you say, compelled to provide services, which is a taking of property of the ambulance and the whatever else you say. But that they're requiring you to use your ambulance for all emergencies. And you're objecting to that compulsion that's taking your property to use the ambulance. That's a totally different issue and a different statute from your complaint about the Medicaid rates, which you're objecting to. Our position is that those two are interrelated and that that's what actually distinguishes us from the other cases, which is, unlike a dermatologist in private practice, we are ambulance companies and under Health and Safety Code 1317 are required to pick everybody up. So what we're complaining of is the statutory scheme, the entire statutory scheme. And there is one case that is not in the papers that I just determined to be relevant yesterday, which is why I couldn't submit it to the court, and it relates to the DMHC, which is the Department of Managed Healthcare, took a position in civil litigation in the state of California in which they said that there's an implied contract between an emergency provider and the insurer to pay the reasonable value for the services. The site for that is Bell v. Blue Cross of California, the 2005 case. And the site is 131 Cal App 4th, 211. And that was discussed heavily in the California Supreme Court case of Prospect Medical Group versus Northridge Emergency Medical Group. When you're through here, please give the clerk the citations in the case. Absolutely. And I apologize sincerely for not briefing this. It occurred to me less than 24 hours ago. That case is 12 years old already, right? I wasn't here the whole time. I've only been on the case for maybe two, three years. So I apologize. And on its face, it's a different issue. Is there any proof, though, that was put in the record by your clients of the overall economic impact of the Medi-Cal reimbursement rate on the private ambulance service? Yes, $60 million. No, but that's your claiming because you're only getting roughly 20% of the cost of it, actually. But I'm saying the overall economic impact of that on your companies. Is there any proof in the record? I mean, is this causing them to be on the verge of bankruptcy? I believe so. I mean, I can just tell you empirically there's an e-mail list that I have with all the parties in this action. And as this case goes on, more and more e-mails bounce. And I understand that that's not in the record. That's not in the record. Maybe they bounce because maybe they signed up for the wrong Internet service. That's just what I can tell you empirically. I do believe that there was evidence of economic harm in the opposition. Is there anything in the record of what percentage of the emergency transportation provided is for Medi-Cal patients? Well, one-third. This is public knowledge. One-third of the residents of California have Medi-Cal. And I believe it depends on the county. Some counties are as high as 55% Medi-Cal. Some counties are lower, obviously. But one-third of Californians have Medi-Cal insurance. And some counties are, I've heard, 55% have Medi-Cal patients. So one of the things that the Affordable Care Act did is drastically expand Medicaid. And so the Affordable Care Act exacerbated the issues in this case because before the Affordable Care Act, the Medicaid population was substantially lower. And then now when you expand Medicaid and you combine that with gross underpayment, you cause serious financial problems to ambulance companies. But there's nothing directly in the record of what the overall effect is on these companies. All you have really is the fact that you're underpaid at the reimbursement rate, right? I'd have to provide supplemental briefing to the court because this was not raised in the answering brief. This was really not an issue at the district court level. As far as evidence goes, there wasn't an evidentiary. This issue was decided mostly on the law and not onóI don't think there's anyó there's very many factual disputes in this case. Soó Well, there's a factual dispute if you're urging takings. And one of the elements of takings that Gilman's been asking you is what the practical effect of the taking is. There are certainly companies going bankrupt. Not every company is bankrupt. Some of them are. I think the financial impact runs the gamut. Like I said, I represent 29 ambulance companies, and the financial effect runs the gamut from being able to survive. It depends a lot on the percentage of Medi-Cal, quite frankly. If it's a high Medi-Cal percentage, 55% of your patients are on Medi-Cal. And I want to point out one of the allegations in the complaint is tható and I think the court must take it as trueó is that plaintiffs are compelled to accept Medi-Cal and that this is not a voluntary system. That plaintiffs risk forfeiture of their ambulance equipment for not renewing their contracts. Those are the allegations of the complaint. I can give you the paragraph numbers here. And so that is 54, which is the forfeiture, and paragraph 71 of the First Amendment complaint, which is Medi-Cal is not voluntary. So those are the allegations of the complaint. Now, wait. You lost on summary judgment, so you can't just rely on assuming the truth of the allegations in your complaint at this point. But I think that under cell attacks, I think we can, which is there has to be burden-shifting discovery. Okay. I mean, the case site we have is Manzrak v. St. Paul, which is cited in the briefs. And like I said, the trouble I'm having is that this issueóthis is a brand-new issue. No one's reallyóthroughout this process, even in summary judgment, I understand what the court is saying, and I'm trying to answer it the best I can. This is a new issue. No one's really complained about the sufficiency of the evidence. This case has been around for, what, seven years now? I understand, but I understandóand I'm not saying that there shouldn'tó plaintiffs shouldn't be put to their proof. I'm not disagreeing with the court whatsoever. But what I'm saying is because of the procedural posture, the issue of what was in the evidence of the oppositionó So, I mean, what I can tellóhere is what I know is in the evidence from the opposition, which is that there was no rate study done, that basically they have done nothing to comply with their plan. That is what I recall from what was in the opposing evidence, that basically they have done nothing in their plan. They submit documents under judicial notice, but their person most qualified deposition witness knew nothing of it. And that's the sine qua non of a denial of a motion for summary judgment trial issue of fact. So, I think myóthat's what I believe the opposition centered upon, which is attacking any evidence that they had of complying with the plan. I believe that's what the opposition evidence centered upon. Now, as far as substantiating the takings and everything of that nature, the burden was never shifted to plaintiffs to prove that. And that's why I'm not prepared to talk about that today, because I honestly don't know if it's in the record, to be frank, and I would have to provide supplemental briefing. If that's what this Court's concern is, because it wasn't raised in the answering brief, I believe it's fair for appellants to get supplemental briefing on that subject. It was not raisedóthis was not an issue raised in the answering brief. And if this was a concern of the director, then it should have been raised in the answering brief. I mean, we should be given an opportunity to discuss what the evidence in the opposition contained. As I recall, as I sit here today, I believe the evidence in opposition was primarily the 30B6 person most qualified witness, saying, I don't know, I don't know, I have no idea how any of this stuff was done. That's what I recall the crux of the opposition being. As far as affirmatively establishing our case, remember, we were defending a motion for summary judgment. This was not a cross-motion for summary judgment. We were defending ourselves, and we were defending on the moving grounds that the defendants moved upon, and not going outside the scope of that. So we weren'tóthey didn't put us to our full proof. They arguably, with the request for judicial notice on rate settings and things of that nature, they arguably put us to the proof on that issue, and we did, and we met that with 30B6 witness depositions. But as far as proving our underlying case, proving the economic effect of our taking, they never challenged that, and so I think there was a reliance on the pleadings for that issue under Celotex, as far as not having a burden to do that. All right. Thank you, counsel. We'll give you two minutes for rebuttal. Thank you. Good morning, Mr. Hanna. May it please the Court, Deputy Attorney General Hadara Stanton, on behalf of the Director of the California Department of Health Care Services. This Court must affirm, because the District Court correctly granted summary judgment for the Director, on all the claims that were pled and argued in the summary judgment motion. Appellants filed this lawsuit because they were unhappy with the Medi-Cal reimbursement rate they received, but they do not allege that they received less than the rate lawfully set by regulation and approved by CMS, the federal entity charged with oversight of the Medicaid program. Their grievance is that they want to be paid higher rates by Medi-Cal, but none of their claims would entitle them to an increased rate. And as the District Court correctly held, each of their claims fail as a matter of law. Contrary to what you've heard this morning, appellants voluntarily choose to participate in the Medi-Cal program. We submitted evidence that they apply for, they submit applications to be Medi-Cal providers, and they have agreed to accept the reimbursement rate they challenge in this litigation as unconstitutional. The District Court correctly found that appellants could not prevail on any of their constitutional claims as a matter of law. Nor, as we're seeing here this morning, can appellants bootstrap their challenges under the Medicaid Act into their claims. I have a little difficulty following the facts in this case. Are there ambulance companies that don't participate in the Medicaid program? My understanding is there are ambulance companies that don't enroll in Medi-Cal as providers. Medi-Cal, yes. Yes, which is the Medicaid program. Do I also understand that there are two different statutes that are involved, and that one is the complaint about the rate, and your answer is that it's a voluntary participation and under precedent. That's the end of that. The second complaint, as I understand it, is that they are required to perform, pick up anybody, covered, uncovered. They're compelled to provide services, and that that's an involuntary. I mean, that's a taking under the takings clause. Well, Your Honor, it's correct that they are compelled by participation as ambulance providers to pick up and provide services to anybody. Regardless of whether they participate in the Medicaid program or Medi-Cal. Exactly right, Your Honor. However, as to the takings claim, they do not challenge those statutes as creating a takings of their property, and it is undisputed that the obligation to provide services to everyone, as Your Honor has just described, arises from statutes that were not at issue here. And as the district court found, it's pursuant to those statutes cited by counsel this morning, the health and safety code sections, and also their contracts with local districts and local entities, that they are required to provide services to everyone. But they don't challenge those statutes here. They've never challenged those statutes here. Specifically, that's that section 1317D? Yes, Your Honor. And that's the statute, part of the code, that requires anybody who's operating an ambulance service to take anybody with an emergency to the hospital regardless of ability to pay. Exactly right. And you're saying the plaintiffs are not challenging takings or other constitutional things because of that obligation? They never have. And as the district court found, if that statute and others like it impose the obligation upon them, any takings clause claim would arise as to those statutes, not as to the regulation that sets the Medi-Cal reimbursement rate. All right. So what they're really unhappy about, if I understand, the record shows they get $118.20 when they transport a Medi-Cal patient, right, if they're signed up for Medi-Cal? Well, I'd like to address what the record shows. But to the extent Your Honor has a question, please. All right. And then they claim that that $118, which was fixed last time 15 years ago, is totally inadequate, that it now only covers 20 percent of their actual cost of transporting a patient. And their claim is that's a taking. All right. And what's wrong with that theory, in your opinion? Well, there are two things wrong with that theory. First, it's essentially a theory that holds that the Medi-Cal reimbursement rate is a taking of their property. And this court has squarely foreclosed that in managed pharmacy care, as counsel concedes. Secondly, again, it is not that regulation that requires them to transport Medi-Cal beneficiaries. It's an entirely separate statutory scheme and contracts that they never put into evidence in this case that would require them to transport those individuals. So there is nothing about the regulation that they're challenging that imposes a taking. Right. But if they didn't sign up for Medi-Cal, if under Section 1317D they would still be obligated to transport anybody who needs emergency services without regard to ability to pay, they'd, in effect, get zero reimbursement, right? Well, we have to assume that, Your Honor. There's no evidence in the record as to their contracts with the local entities. We don't know how the local districts and the counties reimburse them for providing services to people. Because I was going to say, let's assume they're uninsured people who aren't necessarily Medi-Cal patients, and they've still got the same obligation. Every ambulance company has obligations to transport anybody who's uninsured or insured to the hospital, right? Exactly right. And do we know from the record whether these local counties and cities, do they have any reimbursement for transporting uninsured citizens? There is nothing in the record. And if I may, then, address some of Your Honor's questions about the evidence in the record as it goes to the takings claim and also the economic damage. Contrary to counsel's allegations here today, the district court, in fact, looked at the evidence that they submitted. She cited that in her opinion, which is in the record at ER-7, where she relies upon two declarations that they submitted. Those are also in the record here at ER-348 and ER-352. Those were declarations submitted by appellants in support of their allegations. We objected below to a whole slew of evidentiary problems with that, but that was the most evidence that they put into the record to show any evidence of any taking or economic damage or harm or anything like that. And even today, as we stand here on appeal, instead of identifying any evidence that would compel this court to reverse the grant of summary judgment, appellants continue to offer no more than baseless allegations and bald assertions. There's simply no evidence in the record of what they're claiming, of the overall economic impact. As Your Honor asked questions about the percentage of emergency transportation provided to Medi-Cal beneficiaries, there's no evidence in the record of that. As an aside, I would note that, as we have argued repeatedly in this litigation, the path to obtaining higher reimbursement rates runs through the legislature, not through the courts. And as we submitted in our Rule 28J letter, the legislature has recently passed and the governor has recently signed legislation that would enable these providers to apply for additional supplemental payments. And of note, that legislation, which, while it is effective immediately, has not yet been applied, requires ambulance providers to provide this type of data collection so that we have a better understanding of that. But none of that information was proffered by appellants in the case below, in opposition to the summary judgment motion. Now, we've heard argument this morning. Again, private right of action is not relevant here. Appellants voluntarily dropped claims under the Medicaid Act and Supremacy Clause from their operative complaint. They did so to get around the stay imposed by the district court. Those claims were not at issue in the summary judgment motion because plaintiffs had alleged they were not challenging those in the lawsuit. So they were not at issue in the summary judgment motion, they were not at issue in the district court's grant of summary judgment, and they are not properly heard here today. In your view on the takings claim, which I personally, I'm not speaking for anyone else, think is the strongest claim here, at some point do you think that the plaintiffs would be able to demonstrate a taking, say if they were no longer financially viable, or in another way, such as accumulating the amount of the cost of services, wages and equipment and other things that are taken for a period of time when they are transporting Medicaid patients? I do not believe they would be able to state a claim in this lawsuit, and let me explain why. While they describe the taking that has occurred as the use of their ambulances and equipment and employees, et cetera, essentially what they're arguing is because they are not reimbursed by Medi-Cal at cost, that therefore there has been a taking, they have suffered some loss in economic value of their property by transporting Medi-Cal beneficiaries. But they do not, again, under the state plan, which is approved by CMS, the federal entity, with oversight of the Medicaid program, these providers, unlike other types of providers, are not required to be reimbursed at cost. So that's one point. And they don't challenge the state Medicaid plan, they don't challenge CMS's approval of the state Medicaid plan, none of that's at issue here. The other point is essentially that they don't allege that they are required to transport solely Medi-Cal beneficiaries. What they do allege is that they, and I believe they have argued this at some point, is that the state doesn't have its own ambulances, and so they are taking these appellants' ambulances to provide services. But that's how the system works. And they can't bootstrap into this litigation, which contains solely constitutional claims, allegations under the Medicaid Act that are not in the complaint or at issue below. They are claiming that the public ambulance services, say, operated by the fire departments, get supplemental reimbursement that covers their costs, and they don't, so that's their equal protection claim, right? Correct. And what's your answer to that? Well, first of all, there's no evidence in the record that these public and private ambulance providers are similarly situated, nor, and again, they concede that rational basis reviewed would apply to that other statute that provides the supplemental reimbursement for the public providers. And clearly, the state providing supplemental reimbursement to the public providers is a rational means of achieving a legitimate government goal of obtaining all the federal financial participation to which the state could be entitled. So because that legislation is presumed to be valid and must be sustained if a classification is drawn by the statute, if it is rationally related to a legitimate state interest, and that is clearly the case here. And even a discrepancy in reimbursement would not deny them equal protection of the law. And there is no evidence in the record that there has been any discrimination or any discriminatory intent toward private providers as opposed to public providers. Well, the key of equal protection is you should treat similarly situated people the same. The government should. And they're saying, hey, we're ambulance services just like the fire trucks. And again, those are allegations, and they've provided no evidence in the record to show that they are similarly situated to the public entities. And in fact, they're not actually challenging that statute, which is the interesting part of that. They're simply saying by the fact that it exists, by the fact that there is a state statute that provides public providers with supplemental payments, therefore our equal protection rights are violated. And that does not hold true. And indeed, again, recent legislation shows that these providers would also be entitled to supplemental payments. What is your response to opposing counsel's point that all this evidentiary stuff was not raised or considered below, and that's why you want supplemental briefing or something? I would oppose the request for supplemental briefing. This was all squarely before the district court. And my response would be the directors filed a motion for summary judgment, I believe in October 2013. Then the appellants requested, and the department did not oppose their opportunity to reopen discovery, and they did not file their opposition to the summary judgment motion until nine months later in June of 2014. They had ample opportunity to obtain all of the evidence that they needed to make their own case. But were they given an additional four months of discovery at that point? That was a second level of discovery, yes. They took additional depositions and previously had obtained answers to written discovery. Now I know appellant objects to the discovery or the request for judicial notice that was submitted by the director. And my response to that would be, again, multifold, in the sense that, first of all, the district court didn't rely on any of the department's evidence in her order granting summary judgment. The evidence she did rely on were the declarations submitted by appellants that I referenced previously. So giving appellants all the benefit of the doubt, she looked at the evidence that they supplied and ruled as a matter of law as to these constitutional claims. So the evidence submitted by the director in support of summary judgment, publicly available documents that had been either provided, that counsel had either had access to in the previous state court litigation that pertained to the promulgation of the initial regulation back in 1983 and then was last amended in 2002. So all of that and the state plan amendment and other publicly available documents, she didn't rely on any of that evidence in her order granting summary judgment. She found as a matter of law that appellants could not state their claims and that they had submitted note. You can read that the evidence they had submitted was not sufficient to overcome the legal barriers to the claims as they had stated them. And, in fact, the court gave them every opportunity to present their evidence. While the court did rule as a matter of law on the claims, this was, in fact, a summary judgment motion. This was not a motion to dismiss from which the appellants are appealing. So there are a couple of remaining constitutional claims that I'm happy to address if that would be helpful. I can do so briefly. Likewise, the Due Process Claim fails because without any property interest, appellants have not been deprived of anything. The Contracts Clause Claim fails because there has been no change in law that impairs any contractual relationship. The Commerce Clause Claim appears to be abandoned in the sense that appellants did not make sufficient argument in their brief, but in any event, it fails on the merits because the regulation they challenged sets equal rates for in-state and out-of-state providers and services and does not burden interstate commerce in any way. If there are no further questions, I would submit and request that this court affirm the decision and grant of summary judgment in favor of the Director. Thank you. Thank you, counsel. Thank you very much. So based on the discussions at oral argument, it appears there's one fundamental issue where counsel and I disagree, and that is essentially the procedural posture of this case. And as the court has stated and as counsel has stated, why didn't you prove your case at this time and at the time of opposition to the summary judgment motion? And the answer to that is, as I've stated before, is we didn't have to. Just because we didn't submit evidence in an opposition doesn't mean we didn't have the evidence. And the case that we cited in the opposition to the motion for summary judgment On summary judgment, you have to demonstrate that there's a genuine issue of disputed fact. And you have to do that by introducing evidence at that level. And if you're going to talk about regulatory takings, for example, we would want to look at your investment-backed expectations, and there's no evidence of what that is, like how this operates as a regulatory taking. And you were obliged to do that, submit that kind of evidence at the summary judgment stage. And it's all within your control. That's all your own financial documentation. I respectfully disagree. 2361 State Corp. v. Seeley, which is at 2 excerpts 95, is the case that we cited in the opposition saying that the burden doesn't shift to plaintiff until defendant has met their burden. And I think there was a reliance on that at the trial court level, at the district court level, and I think that it was a reasonable reliance that there was no need. Because as counsel stated in her oral argument, the judge found this as a matter of law. Well, right. And she essentially thought she relied on your declarations, which weren't sufficient to create that genuine issue. And many of the other facts are undisputed, because the law is what the law says, and the way the system operates and what law requires you to do which thing. I agree that the law is the law, and I think the vast majority of this motion for summary judgment was decided on just the law and not the underlying facts. Because if it was decided on the facts, then the state has a huge burden-shifting problem. But if you were to put in evidence of economic damage or investment expectations, then that would have met that burden, and maybe the state either would have to come back with something else or that might have caused the district court judge to say, wait a second, maybe there is something fundamentally wrong with this particular sector of medical service providers having to choose between becoming a Medicaid provider or getting something or getting nothing at all. And the longer this goes without them raising your rates, it is affecting takings. I think there was a reliance on the pleadings and 2361 State Corp at page 95 of the excerpts that the state never made that argument in moving, and there is a million different elements and affirmative defenses to a case, and in general when you are opposing a motion for summary judgment, you only oppose the arguments that are being made in the motion, and it is difficult to, I would say it is very rare in my practice that in opposition to a motion for summary judgment, you prove every aspect of your case. You prove every challenged aspect of your case, but these aspects of the case that the court is referring to weren't challenged by defendants at the motion for summary judgment stage, and so there would be no point in putting evidence in support of an unchallenged issue. We were challenging your entire right to maintain your cause of action. On a legal ground, on issues such as, I mean, effectively their claim is, so what, we can pay you 20 cents on the dollar and we can bankrupt you. That is the director's position. Yeah, but you didn't show that that's what they were doing, that they were bankrupting you. Because they never disputed that. That is not a disputed issue in this case. The disputed issue is does the law allow them to do that or not. Under the law regarding takings, that's what you have to show. A trial, I agree, or a proper motion for summary judgment. But that issue was never raised in the motion as to their dispute. We have a Ninth Circuit case that's managed, what is it, managed pharmacy care versus Sebelius that says that plaintiffs have no property interest in the reimbursement rate. I agree. And aren't we bound by that? Well, it's a fellow Ninth Circuit case, so technically no. Stare decisis would be the reason. You're not bound by it. Stare decisis. I think we are. I think we are unless it's en banc. Yeah, I think we are. It wasn't en banc, I don't believe. No, no. Oh, you mean? Never mind. I'll let Judge Wardlaw explain the Ninth Circuit law better than me from the Sixth Circuit. It's the same law as your circuit. So, I mean, first of all, that was kind of an afterthought. And the issue in this case, it's the combination of Health and Safety Code 1317 and that. And also what the issue that was never raised in that case is the Bell case that I cited, where the state of California, as stated in the briefs, property rights are determined according to state law. State law gives a property right according to Bell and the DMHC, which the Bell decision is essentially quoting the DMHC amicus curiae brief verbatim in 90% of the opinion. I'm exaggerating, not 90%, but 10%. And they gave the property right. They say that there's an implied contract between an insurer and the emergency service provider. And for the state to argue otherwise when it applies to them is inconsistent. And so there is a property right under Bell. And I think, and I apologize sincerely for not connecting the two cases together until. . . Be sure to write down the site. Yeah, and I absolutely will. And I think that that drastically changes the. . . I think that case drastically changes the outcome because, as stated in the brief, state law determines property rights. So, with that. . . Thank you, counsel. Thank you. The case is argued will be submitted.
judges: Gilman, Reinhardt, Wardlaw